IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KEITH WILLIAMS,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| V. ) | Civil No. **03-354-JLF** |
| ) | |
| **JERRY POLK,** ) | |
| ) | |
| Respondent. ) | |

### REPORT AND RECOMMENDATION

This Report and Recommendation is respectfully submitted to United States District Judge James L. Foreman pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C).

Petitioner Keith Williams is currently incarcerated at Western Illinois Correctional Center, serving a 50 year sentence for first degree murder. He went to trial in 1995, before a jury in the Circuit Court of St. Clair County, Illinois, Judge Lloyd A. Karmeier presiding.[1] Williams has denied that he was present at the murder scene, and he generally contends that his conviction was premised upon eyewitness identifications elicited by police using a prejudicial photo array, in which his photo was the only one that remotely resembled the description witnesses had given police. Williams is before the Court seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. **(Docs. 1 and 20).** Petitioner seeks a new trial with new counsel. The respondent, Warden Jerry Polk, opposes issuance of the writ. **(Doc. 15).**

---

[1] *People v. Keith L. Williams*, 94-CF-529 (Circuit Court, St. Clair County, Ill. filed 1994).

## The Record

Petitioner has included copies of numerous orders relating to the direct appeal and state post-conviction proceedings, as well as a copy of his petition for leave to appeal the denial of his post-conviction petition to the Illinois Supreme Court.  **(Doc. 1, Exhibits A-D).**  However, his briefs and the trial record have not been presented by petitioner or respondent.  Respondent contends that the petition for writ of habeas corpus can be decided based on the pleadings filed, in accordance with *Simental v. Mastrisciano*, 363 F.3d 607, 612 (7th Cir. 2004).  **(Doc. 15).**  Petitioner "suggests" in his traverse that the Court obtain a copy of the photo array, parts of the trial record relating to the array, and any other reference to the array in the record or correspondence between the Office of the State Appellate Defender and the panel attorney representing Williams on direct appeal.  **(Doc. 20, pp. 1-2).**

Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts directs that the respondent *shall* attach to the answer "such portions of the transcripts" deemed relevant and, in situations involving a post-conviction proceeding, a copy of petitioner's brief on appeal and the opinion of the appellate court.  However, Rule 5 and *Simental v. Mastrisciano* leave it to the Court's discretion to order additional portions of the record, which is relatively rare in light of the standard of review under Section 2254.

Petitioner has merely "suggested" that additional materials be obtained.  After reviewing the parities' pleadings and petitioner's exhibits, this Court does not consider it necessary to direct respondent to produce any additional documentation.  None of the factual assertions in the pleadings or exhibits already provided have been challenged.  Furthermore, this Court's analysis presumes that the photo array is as described– presenting five men, only one fitting the

description eyewitnesses gave police of a man with braids.[2]  Therefore, this Court has not ordered any additional documentation or portions of the record.

### Issues Presented

Petitioner's grounds for the writ of habeas corpus are:

1. Petitioner's conviction is unlawful under the Sixth and Fourteenth Amendments because he was denied effective legal representation, in that: (a) trial counsel failed to challenge photo array and in-court identifications via a pretrial motion to suppress; (b) counsel on direct appeal failed to challenge photo array and in-court identifications; and (c) the appellate court employed an incorrect standard for determining counsels' representation, improperly and unreasonably blending the standards announced in *Strickland v. Washington*, 466 U.S. 668 (1984); and *United States v. Cronic*, 466 U.S. 648 (1984).

2. Petitioner's conviction is unlawful under the Fourteenth Amendment because the identification procedures used in the case were highly suggestive and prejudicial, contrary to *Manson v. Brathwaite*, 432 U.S. 98 (1977); *Neil v. Biggers*, 409 U.S. 188 (1972); and *Simmons v. United States*, 390 U.S. 377 (1968)– precedents unreasonably applied by the state courts of review.

**(Doc. 1, ¶ 13)**.

### Procedural Prerequisites

As a preliminary matter, it must be understood that petitioner must clear two procedural hurdles before the Court may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default. ***Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995).**

**A. Exhaustion**

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must

---

[2]The United States Supreme Court has addressed prejudicial identifications in *Neil v. Biggers*, 409 U.S. 188 (1972); *Manson v. Braithwaite*, 432 U.S. 98 (1977); and *Simmons v. U.S.*, 390 U.S. 377 (1986).

exhaust his remedies in state court." ***O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).** "[S]tate prisoners must give the state court one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." ***Id.*;** *see also* **28 U.S.C. § 2254(c).** In *O'Sullivan v. Boerckel* the Supreme Court of the United States specifically addressed exhaustion under Illinois' two-tiered appellate process, holding that issues must be raised not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review (except under a limited number of special circumstances, which are not applicable to this case). ***O'Sullivan*, 526 U.S. at 843-846.**

Respondent concedes that petitioner has exhausted all available avenues of relief through the state system, in that he is time barred from further pursuing the alleged constitutional errors in a state post-conviction proceedings. **(Doc. 15, p. 2;** *see also* **725 ILCS 5/122-1(c)).** Thus, petitioner has cleared the first procedural hurdle, exhaustion.

### B. Procedural Default

"[S]tate prisoners must give the state court one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." ***O'Sullivan*, 526 U.S. at 842.** More to the point, the "fair presentment" doctrine requires that a petitioner give state courts a meaningful opportunity to pass upon the substance of the claims later pressed in federal court. ***Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999).** For a constitutional claim to be fairly presented to a state court, both the operative facts and the "controlling legal principles" must be submitted. ***Picard v. Connor*, 404 U.S. 270, 277 (1971).** "At bottom, the task of the habeas court in adjudicating any issue of fair presentment is assessing, in concrete, practical terms, whether the state court was sufficiently alerted to the

federal constitutional nature of the issue to permit it to resolve that issue on a federal basis."
***Verdin v. O'Leary*, 972 F.2d 1467, 1476 (7th Cir. 1992).**

In his post-conviction petition[3], Williams, by and through counsel, first presented the issue of whether trial and appellate counsel were ineffective for not challenging the photo array. **(*See* Doc. 1, ¶ 11(a)(B)(5)).** Petitioner did not specifically raise the underlying issue regarding whether the photo array was unconstitutional. The second amended post-conviction petition was denied. **(Doc. 1, ¶ 11(a)(B)(7)).** On appeal, the appellate court concurred that Williams' counsel had not been ineffective, finding that trial counsel had made a reasonable tactical decision not to move to suppress the identifications stemming from the photo array. **(Doc. 1, Exhibit C).** Leave to appeal was sought from the Illinois Supreme Court, based on the appellate court's purported use of the *Cronic/Hattery* standard, rather than the *Strickland* standard. Trial counsel's strategy of not filing a motion to suppress, and appellate counsel's decision not to raise the issue on direct appeal were also attacked. **(Doc. 1, Exhibit D).** Leave to appeal to the Illinois Supreme Court was denied. **(Doc. 1, ¶ 11(a)(B)(9)).**

Respondent contends that the second ground for the writ– regarding the allegedly unreasonable application of *Manson v. Brathwaite*, 432 U.S. 98 (1977); *Neil v. Biggers*, 409 U.S. 188 (1972); and *Simmons v. United States*, 390 U.S. 377 (1968), by the state appellate court–

---

[3]Petitioner filed a pro se post-conviction petition, which generally challenged the photo array. The petition was summarily dismissed. That summary dismissal was subsequently reversed, and petitioner was permitted to file an amended post-conviction petition. Petitioner, proceeding pro se, filed an amended petition. Later, when he was appointed counsel, a second amended petition was filed, which was the one ultimately ruled on by the state appellate court. **(*See* Doc. 1, ¶ 11(a)(A-B)).** Therefore, the original petition and the first amended petition are essentially irrelevant and cannot be used to satisfy the "fair presentment" requirement. ***See* Lewis v. Sternes*, 390 F.3d 1019, 1027 (7th Cir. 2004).**

has been procedurally defaulted under the fair presentment requirement. *Manson*, *Neil* and *Simmons* are precedents relative to prejudicial or suggestive photo arrays. Respondent views this ground as an attack on the underlying propriety of the photo array identification, an argument not presented on direct appeal or in the state post-conviction petition.

      A review of the documentation submitted to this Court by petitioner reveals Williams first cited *Manson*, *Neil* and *Simmons* in his motion for leave to appeal to the Illinois Supreme Court. **(Doc. 1, Exhibit D).** Those precedents were cited for the proposition that the United States Supreme Court has recognized that an improper photo array identification is apt to reduce the reliability of a subsequent courtroom identification. Williams detailed how the identification evidence at trial was flawed, and how the prosecution's case would have crumbled without the photo array identifications. [4] Williams then returned to his principal argument, that it was a clearly unreasonable strategy not to have moved to suppress the photo array identifications. **(Doc. 1, Exhibit D, pp. 16-18).**

      Williams acknowledges that the photo array identifications could have and should have been challenged on direct appeal. However, he also notes that the issue was presented in his first pro se post-conviction petition, and that the state appellate court recognized this when it overturned the summary dismissal of that original petition. Williams admits that the issue was

---

[4]Multiple witnesses had told police the shooter had braids. Only one of the photos in the array was of a man with braids– Williams' photo. All four witnesses selected Williams' photo from the array. One witness, Burch, knew Williams prior to the shooting, but it had been several years since they had seen each other. Williams' theory is that suppression of the photo array identifications would have eliminated three of four identification witnesses– all but Burch, who arguably could have identified Williams based on their prior relationship. However, Williams argues that Burch's identification could have been attacked based on the fact that Burch indicated that he had selected Williams' photo based on the braids, not his prior knowledge of what Williams looked like several years earlier. **(Doc. 1, Exhibit D, pp. 11-16).**

not included in the second amended petition (the petition that ultimately proceeded), but he argues that state law precluded him from directly raising issue because it had been defaulted; leaving him to couch it within his ineffective assistance of counsel arguments. Williams cites the Illinois Post-Conviction Hearing Act (725 ILCS 5/122 et seq.); *People v. Edwards*, 745 N.E.2d 1212 (Ill. 2001); and *People v. Harre*, 636 N.E.2d 23 (Ill.App. 5th Dict. 1994).

      The Illinois Supreme Court noted in *People v. Edwards* that, relative to post-conviction petitions, "rulings on issues that were previously raised at trial or on direct appeal are *res judicata,* and issues that could have been raised in the earlier proceedings, but were not, will ordinarily be deemed waived." **745 N.E.2d at 1219.** *People v. Edwards* and *People v. Harre* illustrate that the merits of the underlying constitutional issue are tangentially analyzed relative to whether there was ineffective assistance of counsel, whether a defendant has suffered prejudice and whether there is a reasonable probability that the outcome of the trial would have been different. However, those cases also illustrate that the underlying constitutional arguments must too be presented. In Williams' case, arguments specifically based on *Manson*, *Neil* and *Simmons* were not presented in one complete round of review in the state's established review process, as required by *O'Sullivan v. Boerckel*. "[A]n assertion that one's counsel was ineffective for failing to pursue particular constitutional issues is a claim separate and independent of those issues." ***Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004).** Accordingly, Williams has procedurally defaulted his second ground for relief, regarding the constitutionality of the photo array.

      **C. Cause & Prejudice / Miscarriage of Justice:**

A petitioner can circumvent this bar to review if he is able to demonstrate cause for his

7

procedural error and establish prejudice resulting from that error.  **Howard v. O'Sullivan, 185 F.3d 721, 726 (7th Cir. 1999); and Coleman v. Thompson, 501 U.S. 722, 750 (1991).**  Absent a specific showing of cause and prejudice, "the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'" **Coleman, 501 U.S. at 748.**  This requires a showing of actual innocence, "i.e, that no reasonable juror would have found him guilty of the crime but for the error(s) he attributes to the state court." **Lewis v. Sternes, 390 F.3d 1019, 1026 (7th Cir. 2004) (citing Schlup v. Delo, 513 U.S. 298, 327-329 (1995)).**

Having taken the position that the direct challenge to the photo array was fairly presented in the state courts, Williams does not address whether cause and prejudice, or a miscarriage of justice excuses this default.  Therefore, Issue/Ground 2 has been irrevocably waived.  Williams does incorporate an analysis of the impact of the photo array evidence on the outcome of his trial into his arguments regarding ineffective assistance of counsel.  For reasons detailed below, it is apparent there has not been a miscarriage of justice.  In any event, having failed to fairly present this claim within the state court system, and having failed to present any new evidence of innocence, even a meritorious constitutional claim cannot be analyzed.  **See U.S. ex rel. Bell v. Pierson, 267 F.3d 544, 551 (7th Cir. 2001).**

### The Standard of Review

> Under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d)(1), habeas relief may be granted if the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" In *Williams v. Taylor*, 529 U.S. 362, 405, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Court explained that a state court decision is "contrary to" Supreme Court precedent if the "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "confronts facts that are

> materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. An unreasonable application of Supreme Court precedent occurs when "the state court unreasonably applies it to the facts of the particular state prisoner's case" or "unreasonably extends a legal principle ... to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." To be unreasonable, the decision of the state court must not be simply incorrect or erroneous, it must have been "objectively unreasonable." *Wiggins v. Smith*, --- U.S. ----, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

*Johnson v. Bett*, 349 F.3d 1030, 1034 (7th Cir. 2003).

### Ineffective Assistance Claims

Petitioner Williams argues that his conviction is unlawful under the Sixth and Fourteenth Amendments because he was denied effective legal representation, in that: (a) trial counsel failed to challenge photo array and in-court identifications via a pretrial motion to suppress; (b) counsel on direct appeal failed to challenge photo array and in-court identifications; and (c) the appellate court employed an incorrect standard for determining counsels' representation, improperly and unreasonably blending the standards announced in *Strickland v. Washington*, 466 U.S. 668 (1984); and *United States v. Cronic*, 466 U.S. 648 (1984).

The third point of error raised by Williams will be addressed first, because it questions what the proper standard of review is. Petitioner argues that the state appellate court reviewing the denial of his post-conviction petition effectively blended the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984); and *United States v. Cronic*, 466 U.S. 648 (1984). Respondent contends that this issue has not been properly presented in the state court system and, in any event, the proper standard of review, as announced in *Strickland v. Washington*, was properly applied by all of the reviewing courts. Because the use of the proper standard of review is key to determining whether the decision of the state court "was contrary to, or involved an

9

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," this issue cannot be avoided.

There is no dispute that the proper standard is that announced in *Strickland v. Washington*. For a conviction to be reversed for ineffective assistance of counsel, a two-prong test must be met: (1) the trial counsel's representation must fall below an objective standard of reasonableness, and (2) counsel's deficient performance must have prejudiced the defense. **Strickland v. Washington, 466 U.S. 668, 687 (1984).** The first prong of the *Strickland* test requires a showing that counsel made errors so serious that counsel was not functioning as guaranteed the [petitioner] by the Sixth Amendment of the United States Constitution. *Id.* The second prong of the *Strickland* test requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial. *Id.*

In *Bell v. Cone*, 535 U.S. 685 (2002), the Supreme Court explained its decision in *United States v. Cronic*, 466 U.S. 648 (1984), vis-a-vis *Strickland v. Washington*:

> In *Cronic,* we considered whether the Court of Appeals was correct in reversing a defendant's conviction under the Sixth Amendment without inquiring into counsel's actual performance or requiring the defendant to show the effect it had on the trial. We determined that the court had erred and remanded to allow the claim to be considered under *Strickland's* test. In the course of deciding this question, we identified three situations implicating the right to counsel that involved circumstances "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."
>    First and "[m]ost obvious" was the "complete denial of counsel." A trial would be presumptively unfair, we said, where the accused is denied the presence of counsel at "a critical stage," a phrase we used in *Hamilton v. Alabama,* 368 U.S. 52, 54, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), and *White v. Maryland,* 373 U.S. 59, 60, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) *(per curiam),* to denote a step of a criminal proceeding, such as arraignment, that held significant consequences for the accused. Second, we posited that a similar presumption was warranted if "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." Finally, we said that in cases like *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), where counsel is called upon to render assistance

> under circumstances where competent counsel very likely could not, the defendant need not show that the proceedings were affected.
> .... When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete. We said "if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing." Here, respondent's argument is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points. For purposes of distinguishing between the rule of *Strickland* and that of *Cronic,* this difference is not of degree but of kind.

**Bell, 535 U.S. at 695-697 (footnotes omitted; internal citations to *Cronic* omitted).**

In Williams' situation, the state appellate court specifically cited *Strickland v. Washington*, 466 U.S. 668 (1984), as the standard for a claim of ineffective assistance of counsel.  **(Doc. 1, Exhibit C, p. 4).**  *United States v. Cronic*, 466 U.S. 648 (1984), was not cited by the appellate court, but *People v. Negron*, 697 N.E.2d 329 (Ill.App. 1st Dist. 1998), was cited.  **(Doc. 1, Exhibit C, p. 4).**  Williams asserts that *Negron* rested on *People v. Hattery*, 488 N.E.2d 513 (Ill. 1985), which was premised upon *Cronic*.  **(Doc. 1, Exhibit C, p. 4).**

One need only review the state appellate court's reference to *Negron* to realize that Williams' argument is specious.  After clearly stating the *Strickland* test, the appellate court added a few examples of the obstacles in petitioner's path, including the following:

> Unless a strategy is so unsound that counsel can be said to have entirely failed to conduct any meaningful adversarial testing, it cannot form the basis of a claim of ineffective assistance of counsel.  See *People v. Negron*, 297 Ill.App.3d 519, 538, 697 N.E.2d 329, 342(1998).

**(Doc. 1, Exhibit C, pp. 4-5).**  That is the sole mention of *Negron*.  The reference to *Negron* and the notion of no adversarial testing drawn from *Cronic*, when read in context, pertained to the distinction pointed out in *Negron*, that anything less than an entire/total abandonment of the adversarial process will not, by itself, be presumed unconstitutional.  Williams ignores the

court's use of the signal "see," which indicates that an inference must be drawn. Furthermore, the *Negron* decision was specifically premised upon the *Strickland* test. **See *Negron*, 538 N.E.2d at 342.** Therefore, this Court considers the state appellate court to have utilized the *Strickland* standard, not a blend of standards, or an improper standard drawn from *Cronic*. Thus, the remaining questions relate to whether there was any error in the application of *Strickland*.

During an evidentiary hearing relative to Williams' post-conviction petition, attorney Randall Kelley explained his decision not to move to suppress the photo array, and instead to present it to the jury to attack the credibility of the witnesses and police investigation:

> Well, I this particular instance there–I mean there were allegations in the discovery that numerous people–numerous people were going to identify or at least say that they could identify Keith as the perpetrator of this incident. At the same time the photographic lineup showed that while there were, I think, five photographs of African-American males, Keith was the only one who had braids. I mean I just didn't think Keith looked very much like the others. Now normally you would want to suppress an I.D. like that? Yeah. But in a situation where we hadn't–where we hadn't–where under this fact scenario where a number of people were in a position where they could have I–or could I.D. Keith at trial, I wanted to be able to show in our strategy that from the very start that the photographic lineup was tainted, that the–that for whatever reason the East St. Louis Police Department was deciding it was this one particular individual, and if we had suppressed that, I couldn't cross-examine any of the witnesses in the trial about that– that differential.

**(Doc. 1, Exhibit C, pp. 2-3 (quoting from the transcript)).** With that said, Kelley agreed that the photo array would have been thrown out, but he believed the in-court identifications would not have been suppressed because they had an independent basis for the identifications. **(Doc. 1, Exhibit C, p. 3).**

The state circuit court and appellate court concluded that Williams had failed to prove that trial counsel's actions were not a valid or reasonable trial strategy, regardless of the ultimate success of this tactic. The appellate court cited Timothy Burch's testimony that he knew

Williams prior to the incident, thereby affording him an independent basis for being able to identify Williams in court.  The appellate court reasoned that although Burch could supply an in-court identification of Williams, defense counsel still had the opportunity to attack the police investigation.  **(Doc. 1, Exhibit C, pp. 3-5).**  This all goes toward the first prong of the *Strickland* test– trial counsel's representation must fall below an objective standard of reasonableness.  The second prong of the test was not addressed by the appellate court.

A petitioner bears a "heavy burden in proving that [his or her] trial attorney rendered ineffective assistance of counsel."  **U.S. v. Holland, 992 F.2d 687, 691 (7th Cir. 1993).**  Reasonable, informed strategic decisions are virtually unchallengeable under *Strickland*.  **U.S. ex rel. Hampton v. Leibach, 347 F.3d 219, 247 (7th Cir. 2003).**  There is a "strong presumption" that counsel's conduct fell within the wide range of reasonable professional assistance.  **Canaan v. McBride, 2005 WL 43725 at *6 (7th Cir. January 11, 2005).**  The key factor in attorney Kelley's strategy is the notion that, if the photo array and consequential identifications had been suppressed, he would not have been able to attack witnesses' identifications and the police investigation.  Kelley also assumes that Burch would still have provided a valid in-court identification of Williams.  This Court has virtually no doubt that, if the photo array and consequential identifications had been suppressed, Kelley could have still used the array to attack the police investigation and to cast doubt over the in-court identification(s).  But the extent to which Kelley would have been permitted to essentially re-litigate the propriety of the photo array is debatable, which could have diminished the force of the argument.  For example, the prosecutor could have stipulated to the legal impropriety of the photo array and thereby limited the amount of discussion on this topic.  Thus, there is a reasonable basis for Kelley's

tactical decision, just as the state appellate court concluded. Consequently, both trial and appellate counsel cannot be faulted for not pursuing this issue.

In any event, Williams must still satisfy the second prong of the *Strickland* test, which this Court addresses only for District Court's benefit– for the sake of argument. "The prejudice prong is met if a defendant can show that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different." ***U.S. v. Harris*, 2005 WL 43727, at \*7 (7th Cir. January 11, 2005).** A "reasonable probability" of a different result is one "sufficient to undermine confidence in the outcome." ***Strickland*, 466 U.S. at 694.** Williams is now, in his traverse to respondent's answer, attacking not only the photo array itself (an issue that has been procedurally defaulted), but also Burch's independent basis for identifying Williams, and the other witnesses' identifications. **(Doc. 20).** Williams' arguments attempting to dismantle the case against him piece-by-piece are not properly before the Court, and are based upon a chain of suppositions. The Court's focus must remain on whether but for trial counsel's one (possible) discreet error, there is a reasonable probability that the result of the proceeding would have been different.

The non-suppression of the photo array identifications does not trigger the chain of events Williams suggests. Williams acknowledges that, at a minimum, Burch had an independent basis to identify him. Williams merely supposes that Burch's memory of Williams had faded and was otherwise tainted by the photo array. Moreover, there is no dispute that attorney Kelley had the opportunity to fully cross-examine each witness's identification testimony and attack the police investigation, which allowed the jury to decide whose story they believed. Even without the photo array identifications, the jury would have been left to make the

same call, which does not undermine the Court's confidence in the outcome. Therefore, petitioner Williams cannot satisfy the prejudice prong of the *Strickland* test.

### Recommendation

For the aforestated reasons, it is this Court's recommendation that petitioner Keith Williams' petition for relief pursuant to 28 U.S.C. § 2254 **(Doc. 1)** be denied in all respects.

**Submitted: January 19, 2005**

**S/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**U. S. MAGISTRATE JUDGE**
